U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**Signed December 23, 2009**                           **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HRM HOLDINGS, LLC, | § | CASE NO. 07-34692-SGJ-7 |
| DEBTOR. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 09-03184 |
| | § | |
| HOSPITAL RESOURCES MANAGEMENT | § | |
| LLC; HRM ANESTHESIA HOLDINGS | § | |
| LLC; FLORIDA HRM LLC; TEXAS | § | |
| HRM LLC; AND HRM EMERGENCY | § | |
| HOLDINGS LLC, | § | |
| DEFENDANTS. | § | |

**MEMORANDUM OF OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

## I.  Introduction.

Before this court is the Defendants' Motion to Dismiss (the
"Motion to Dismiss") the Second Amended Complaint (the "Second
Amended Complaint") of Scott M. Seidel (the "Trustee" or

-1-

"Plaintiff") filed in the above-referenced adversary proceeding.

This adversary proceeding was filed on June 5, 2009 (and two amended complaints were subsequently filed). In essence, the adversary proceeding (as now framed) requests that the court: (a) disregard the legal separateness between the LLC-Debtor[1] and the five LLC-Defendants (which are non-debtors); and (b) render a judgment that the five Defendants should be liable for all the creditor-claims against the Debtor. In other words, the Plaintiff seeks the remedy of entity veil-piercing.

## II.  Relevant Statutory Authority.

Before discussing the specific facts of the Second Amended Complaint, the court believes that it is important to briefly comment on the statutory authority that is applicable in this adversary proceeding.

The three main sources of statutory authority that appear to be relevant are the Texas Limited Liability Company Act (the "Tex. Ltd. Liab. Co. Act"), the Texas Business Corporation Act (the "Tex. Bus. Corp. Act"), and the Texas Business Organizations Code (the "Tex. Bus. Orgs. Code"). The Texas Legislature enacted the Tex. Bus. Orgs. Code in 2003 and, in doing so, reorganized and recodified the statutes governing business entities (including the Tex. Ltd. Liab. Co. Act and the Tex. Bus Corp.

---

[1] The acronym "LLC," as used in this opinion, refers to the form of business entity known as a "limited liability company."

Act) into a single code.  Although enacted in 2003, the Tex. Bus.
Orgs. Code did not become effective until January 1, 2006.  This
delay was structured to provide a transition period ("Transition
Period") during which domestic entities formed on or after
January 1, 2006, were governed by the Tex. Bus. Orgs. Code, and
those formed before January 1, 2006, continued to be governed by
the old Texas statutes under which they were formed *unless* such
entities filed with the Texas Secretary of State a "Statement of
Early Adoption" of the Tex. Bus. Orgs. Code.  Notably, on January
1, 2010, all of the old Texas statutes will expire and the Tex.
Bus. Orgs. Code will henceforth apply to all business entities
(no matter when such entities were formed).

　　　All of the Defendants in this action—as well as the Debtor—
are Texas LLCs and were (according to the Second Amended
Complaint) formed *prior* to January 1, 2006.  Additionally, all of
the conduct described in the adversary proceeding occurred *prior*
to January 1, 2010.  Thus, the Tex. Ltd. Liab. Co. Act and the
Tex. Bus. Corp. Act (for reasons that will later be explained)
appear to be applicable with regard to the conduct and duties at
issue in this adversary proceeding.  There is nothing in the
record indicating whether the Debtor and Defendants might have
filed with the Texas Secretary of State a "Statement of Early
Adoption" of the Tex. Bus. Orgs. Code during the Transition
Period.  However, even if they did, there should be no material

-3-

effect in this adversary proceeding, since the provisions of the Tex. Lim. Liab. Co. Act and the Tex. Bus. Corp. Act that are relevant in this adversary proceeding (which will be herein later discussed) were not materially changed when recodified into the Tex. Bus. Orgs. Code.

### III.  Relevant Facts.

The underlying facts are that HRM Holdings, LLC ("HRM" or the "Debtor"), which was chartered in April 2004, was allegedly in the business of providing consulting services to healthcare providers (*e.g.*, practice development; analysis of profitability of physicians; physicians recruiting; and relocation of medical practices).  The members (*i.e.*, equity owners) of the Debtor at relevant times were Stephen Lorenz, Mark Sanderson, J. Richard Sanderson, and a Dr. Janiak.  Mr. Lorenz's primary duties were allegedly to develop business for the Debtor.  None of the individual members of the Debtor are named as parties in the Second Amended Complaint.

The Second Amended Complaint alleges that in March 2005, while HRM was providing consulting services to healthcare providers, one of the Defendants, Hospital Resources Management, LLC was formed, with its sole member allegedly being Mr. Lorenz. Hospital Resources Management, LLC, in turn, was allegedly the sole member of:  HRM Anesthesia Holdings, LLC; Florida HRM LLC; Texas HRM LLC; and HRM Emergency Holdings, LLC (collectively,

-4-

along with Hospital Resources Management, LLC, the "Defendants").
In mid-2005, HRM allegedly had several consulting contracts with
physician groups and was operating profitably.  Then, in the
latter half of 2005, two consulting contracts were terminated or
cancelled and this left HRM as an "unprofitable operation."  At
this point in late 2005, "[r]ather than either shut [HRM's
business] down or attempt to make it profitable again, *the
management* of HRM began engineering a transfer of all of the
business of [HRM] to [the Defendants]."  Second Amended
Complaint, ¶ 9 (emphasis added).  HRM is alleged to have
engineered this without informing its creditors, including
creditor Larry C. Winstead.

The Second Amended Complaint goes on to allege that *the
Debtor* "maintained a facade of being an operating company" and
incurred debt (*i.e.,* the debt owed to the creditors in the
bankruptcy case) when, in fact, it was unprofitable and unable to
meet its daily obligations."  Second Amended Complaint, ¶ 14.
The various examples of this are described as follows:  (a) the
only consulting contract that Debtor had remaining at this time
was the so-called "Broken Arrow Contract" and as "part of the
scheme to avoid disclosing the liquidation of its assets," the
Debtor allegedly continued to "nominally service" such contract
by subcontracting all of the consulting services to one of the
Defendants; (b) a new consulting contract with Sterling Health

-5-

was allegedly placed with one of the Defendants instead of the Debtor (to avoid having assets go into the Debtor); (c) one of the Defendants began paying the Debtor's landlord; and (d) the Debtor avoided "formally notifying its creditors that it was ceasing operations and liquidating its assets." Second Amended Complaint, ¶¶ 10, 11, 12 and 14. The Second Amended Complaint also asserts that the facade of HRM being an operating company continued on until September 2007 when one of the Defendants "purchased the last remaining asset of HRM" and HRM, the same day, filed Chapter 7. Second Amended Complaint, ¶¶ 8-15 & 17.

The one and only claim or count pleaded by the Plaintiff is: "single business enterprise theory." The Plaintiff seeks that the court render a judgment "that all of the Defendants should be considered a single business enterprise with the Debtor in this case and that all of the assets of the Defendants should be available for satisfaction of the claims of creditors in this case." The justification for this remedy sought is as follows: The Debtor allegedly committed "fraud" by failing to notify creditors that it was ceasing to do business and would liquidate. Plaintiff argues that section 11.052 of the Tex. Bus. Orgs. Code imposes a duty on a Texas company that ceases operations to notify creditors. TEX. BUS. ORGS. CODE § 11.052 (Vernon 2003).[2] By

---

[2] Section 11.052 of the Tex. Bus. Orgs. Code (entitled "Winding Up Procedures") states in pertinent part:

(a) . . . on the occurrence of an event requiring winding up of a

not complying with this duty, the Trustee alleges that the Debtor committed the equivalent of fraud and all of the assets of the single enterprise (*i.e.*, of the Defendants) should be available to satisfy creditor claims.

One last point is noteworthy about the Second Amended Complaint. It, for the first time, attempts to articulate an actual "fraud" perpetrated by the Defendants. Actual fraud (as opposed to constructive fraud) is—and has been for several years now—a statutory requirement for entity veil piercing in Texas (at

---

domestic entity ["event" includes a voluntary decision to windup a domestic entity] . . ., the owners, members, managerial officials, or other persons specified in the title of this code governing the domestic entity shall, as soon as reasonably practicable, wind up the business and affairs of the domestic entity. The domestic entity shall:

(1) cease to carry on its business, except to the extent necessary to wind up its business;

(2) if the domestic entity is not a partnership, **send a written notice of the winding up to each known claimant against the domestic entity**;

(3) collect and sell its property to the extent the property is not to be distributed in kind to the domestic entity's owners or members; and

(4) perform any other act required to wind up its business and affairs.

(b) During the winding up process, the domestic entity may prosecute or defend a civil, criminal, or administrative action.

Emphasis added.

Note that the Tex. Ltd. Liab. Co. Act codified these very same concepts for LLCs. Tex. Ltd. Liab. Co. Act, Tex. Rev. Civ. Stat. Art. 1528n, Art. 6.05(2) (Vernons 2003)(expires Jan. 1, 2010). Thus, despite the Plaintiff's having cited the Tex. Bus. Orgs. Code, and even though this court deems the Tex. Ltd. Liab. Co. Act to be the germane statute here, there appears to have been the same duty to send a notice of the winding up of an LLC under the prior law.

least with regard to contractual obligations).[3]  The attempt at
articulating an "actual fraud" is, no doubt, due to an earlier
ruling made by this court.[4]  Specifically, after the Plaintiff
filed its First Amended Complaint, which merely asserted "single
business enterprise theory" as a basis for liability and never
specified any fraud, the Defendants filed a Rule 12(b)(6) Motion
to Dismiss, arguing, essentially, that the Texas Supreme Court
made clear in late 2008 that there is no "single business
enterprise liability theory" recognized in the law in Texas and
that it is inconsistent with what the Texas Legislature decreed
in article 2.21 of the Tex. Bus. Corp. Act.  *See SSP Partners v.
Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex.
2008).  Significantly, the Texas Supreme Court held in *SSP
Partners* that: (a) it had actually "never approved of imposing
joint liability on separate entities merely because they were
part of a single business enterprise" and (b) "the single
business enterprise liability theory is fundamentally
inconsistent with the approach taken by the [Texas] legislature

---

[3] TEX. BUS. ORGS. CODE § 21.223 & §§ 21.224-.225 (Vernon 2003) (formerly TEX. BUS. CORP. ACT ART. 2.21 (Vernon 2003), which expires Jan. 1, 2010).  Note that while the Defendants are all LLCs, and the soon-to-be-expired Tex. Ltd. Liab. Co. Act (which appears to apply herein) had no analog to article 2.21 of the Tex. Bus. Corp. Act, Texas courts and other jurisdictions have applied to LLCs the same state law principles for veil-piercing that they have applied to corporations.  *See, e.g., Pinebrook Props. Ltd. v. Brookhaven Lake Prop. Owners' Ass'n*, 77 S.W.3d 487, 499 (Tex. App.-Texarkana 2002, pet. denied) (applying corporate alter ego veil piercing precedent in analyzing plaintiff's attempts to pierce the veil of an LLC).

[4] See Docket No. 18.

in article 2.21 of the Tex. Bus. Corp. Act." *Id.* at 452 & 456. Rather, under article 2.21 of the Tex. Bus. Corp. Act, there is only a viable claim to disregard a corporate structure if there was an actual fraud perpetrated **and** such fraud directly benefitted the alleged perpetrator(s). *Id.* at 455-56.[5] Since this court determined that the Plaintiff had not pleaded any fraud with any particularity to justify imposing liability, the

---

[5] Article 2.21 of the Tex. Bus. Corp. Act states:

A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to:

(1) such shares other than the obligation, if any, of such person to pay to the corporation the full amount of the consideration, fixed in compliance with Article 2.15 of this Act, for which such shares were or are to be issued;

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an **actual fraud** on the obligee **primarily for the direct personal benefit** of the holder, owner, subscriber, or affiliate; or

(3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including without limitation: (a) the failure to comply with any requirement of this Act or of the articles of incorporation or bylaws of the corporation; or (b) the failure to observe any requirement prescribed by this Act or by the articles of incorporation or bylaws for acts to be taken by the corporation, its board of directors, or its shareholders. . . .

Emphasis added. As earlier mentioned, Tex. Bus. Corp. Act Art. 2.21 expires January 1, 2010. Sections A and B of article 2.21 have been recodified in substantially similar form in Tex. Bus. Orgs. Code § 21.223 and §§ 21.224-.225, respectively. Hereinafter, this court will collectively refer to these statutes as the "Texas Veil-Piercing Statutes."

court gave the Plaintiff ten days to replead and provide a more definite statement of actual fraud allegations.  The Second Amended Complaint was the result.

## IV. **Defendants' Motion to Dismiss the Second Amended Complaint**.

Defendants have filed a Motion to Dismiss the Second Amended Complaint, pursuant to Rule 12(b)(6), arguing that the Second Amended Complaint is a feeble attempt to address the deficiencies found by the court with regard to the First Amended Complaint. While the Second Amended Complaint adds a few sentences, cites the Texas Veil-Piercing Statutes, and states that:  (a) ***the Debtor*** "did not inform all of its creditors of its intent to terminate its operations," (b) ***the Debtor*** "specifically did not inform creditor Larry C. Winstead that it was terminating business operations," (c) ***the Debtor*** "maintained a facade of being an operating company when, in fact, it was unprofitable and unable to meet its daily obligations," (d) the failure to notify creditors of cessation of business, as set forth under the Tex. Bus. Orgs. Code § 11.052, constitutes a false representation, and (e) the "fraudulent activity described" resulted in the Defendants "owning assets which should have belonged to the Debtor," the Defendants allege that the Second Amended Complaint does not come close to identifying the "who, what, when and where" of the alleged fraud.  The Defendants argue that the Second Amended Complaint fails to state how it is that ***all***

-10-

**Defendants** are responsible for this alleged failure to give notice. The Defendants also allege that the Second Amended Complaint does not satisfy Bankruptcy Rule 7009(b) because it does not "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Motion to Dismiss at ¶ 16 (citing *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 362 (5th Cir. 2004)).

## V. Legal Standards Applicable to the Motion to Dismiss.

In considering a Motion to Dismiss under Rule 12(b)(6), a complaint is to be charitably construed, with all well pleaded factual allegations being accepted as true, and with any reasonable inferences from those facts being drawn in favor of the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 1964-65 & 1973 n. 14 (2007). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

Analysis of the Second Amended Complaint and the Motion to Dismiss seems to largely boil down to the following two issues. First, is there, in fact, a duty to notify creditors of the intent to cease business under Texas law and, assuming there is such a duty, is an allegation that a debtor did not comply with that duty, *vis-a-vis* a specific creditor, potentially the type of

-11-

"actual fraud" required by the Texas Veil-Piercing Statutes? Second, assuming an "actual fraud" might have been perpetrated and pleaded, has the Plaintiff pleaded that the alleged "actual fraud" directly and personally benefitted all of the Defendants?

## A. Failure to Notify Creditors of Cessation of Business as a Potential Actual Fraud.

Actual fraud occurs "when (i) a party conceals or fails to disclose a material fact within the knowledge of that party; (ii) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (iii) the party intends the other party to take some action by concealing or failing to disclose the fact; and (iv) the other party suffers injury as a result of acting with knowledge of the undisclosed fact." *See JNS Aviation, LLC v. JNS Aviation, Inc.*, 376 B.R. 500, 530 (Bankr. N.D. Tex. 2007), *aff'd*, 2009 WL 3487515 (N.D. Tex. 2009).  Moreover, it is true that a "company that ceases operations, liquidates, and closes down has a duty to advise its outstanding creditors of such facts." *See JNS Aviation*, 376 B.R. at 531 (citing Tex. Lim. Liab. Co. Act, Tx. Rev. Civ. Stat. Art. 1528n, art. 6.05(2)).  Accordingly, it appears that actual fraud can be the concealment of material facts or failure to disclose a material fact, particularly if one had a duty to disclose such material fact.  *Id.* (citing *Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 516 S.W.2d 138, 142 (Tex. 1974)).

-12-

Construing the Second Amended Complaint "charitably" as the law requires this court to do, and drawing reasonable inferences from the pleaded allegations in favor of the non-moving party, this court concludes that the Second Amended Complaint does satisfy the requirement for pleading actual fraud under Texas law. The Plaintiff has now put the Defendants on notice that he is asserting that the former management of the Debtor concealed material facts from its creditors including Larry Winstead—those material facts being that the Debtor was ceasing operations and transferring operations to new entities. This was potentially a violation of legal duties under article 6.05(2) of the Tex. Ltd. Liab. Co. Act, which, as noted, imposes a duty on a company to advise its outstanding creditors that it is ceasing operations, liquidating or shutting down.[6] Per Judge Jones' opinion in *JVS Aviation*, this failure to disclose can constitute actual fraud under the Texas Veil-Piercing Statutes. *See JNS Aviation,* 376 B.R. at 531.

## B. *Direct Personal Benefits to the Defendants*.

However, the Plaintiff has still failed to show how the fraud that was allegedly perpetrated specifically benefitted the

---

[6] As mentioned, the Plaintiff cited to § 11.052 of the Tex. Bus. Orgs. Code in the Second Amended Complaint, but Art. 6.05(2) of the Tex. Ltd. Liab. Co. Act appears to be applicable in this case, since the Defendants in the above-referenced adversary proceeding are all LLCs formed before January 1, 2006, and the alleged fraud occurred prior to the expiration of the Tex. Ltd. Liab. Co. Act. In any event, the duties/result are the same under either statute.

Defendants. Even construing the Second Amended Complaint charitably, as the court is required to do, the court still struggles with whether or not the Second Amended Complaint adequately shows how (and which) Defendants personally benefitted from the alleged fraud committed as required by the Texas Veil-Piercing Statutes. *See* Tex. Bus. Corp. Act art. 2.21. See also *SSP Partners, 275 S.W.3d at 451-52.* It is not at all clear who the specific perpetrators of the alleged actual fraud were and if they actually, directly benefitted from the alleged fraud perpetrated.

Despite this insufficiency, the court has decided to give the Trustee one final attempt to replead—but this is it. Accordingly, the Trustee has ten (10) days from the entry of this Order to file a third amended complaint that must adequately provide a more definite statement. The court admonishes the Trustee to examine the Texas Veil-Piercing Statutes and *SSP Partners,* the Texas Supreme Court opinion discussed herein, when and if deciding to draft a third amended complaint. Should the Trustee fail to file a third amended complaint within ten (10) days from the entry of this Order, the Motion to Dismiss will be granted and this adversary proceeding shall be dismissed. Should the Trustee file a third amended complaint, responsive pleadings

must be served by the Defendants within ten (10) days of when the third amended complaint is served.

**IT IS SO ORDERED**.

***END OF MEMORANDUM OF OPINION AND ORDER***